### EDGAR CRAIGHEAD V. THE STATE.

#### No. 4442.   Decided February 17, 1909.

**1.—Obstructing Public Road—Evidence—Want of Criminal Intent.**

Where upon trial for willfully obstructing a public road, the court charged on the law of principals, it was reversible error in view of this charge to reject testimony on part of the defense which strongly raised the issue of lack of willfulness or criminal intent on the part of the defendant as well as his father in fencing up the road, and which showed that the father of defendant was authorized by the court in an unofficial way to locate the roadbed of the alleged road and that the defendant simply carried out his father's instructions in the matter.

**2.—Same—Charge of Court—Lack of Criminal Intent.**

Where upon trial for willfully obstructing a public road the evidence showed that the defendant was acting under the direction of his father, and presumed the latter had a right to build the fence in question, and defendant had no knowledge of any criminal intent on the part of his father, but presumed that he had gotten permission from the commissioners court to locate the roadbed of the alleged obstructed road, the court should have clearly and fully submitted this issue as requested.

Appeal from the County Court of Stephens.   Tried below before the Hon. A. J. Power.

Appeal from a conviction of willfully obstructing a public road; penalty, a fine of $1.

The opinion states the case.

*W. P. Sebastian,* for appellant.—On question of lack of willful intent: Laroe v. State, 30 Texas Crim. App., 374; Bowers v. State, 24 Texas Crim. App., 542; Myers v. State, 24 Texas Crim. App., 334; Lyle v. State, 21 Texas Crim. App., 153.

*F. J. McCord,* Assistant Attorney-General, and *Stubblefield & Patterson,* for the State.—Cited Kelly v. State, 80 S. W. Rep., 382; Crouch v. State, 39 Texas Crim. Rep., 145, 45 S. W. Rep., 578; Ward v. State, 42 Texas Crim. Rep., 435, 60 S. W. Rep., 757.

RAMSEY, JUDGE.—Appellant was found guilty in the County Court of Stephens County on a charge of unlawfully and wilfully obstructing a public road and his fine assessed at the sum of $1. On the trial he introduced one H. M. Stevenson, a member of the commissioners court of said county, by whom he proposed to prove the following facts: "My name is H. M. Stevenson. I reside in Stephens County and have lived here over thirty years. I am acquainted with W. A. Craighead and have known him ever since he came to the county, about twenty-three years ago. He lives on the south side of the lower Breckenridge and Albany road, near the bridge over Sandy Creek. I am a member of the commissioners court of Stephens County, Texas, and have served one term. The defendant in this case is a son of W. A. Craighead. At the special April term of the commissioners court of Stephens County, Texas, W. A. Craighead came before said court and wanted the court to locate the roadbed of the lower Breckenridge and Albany road where it passes through his land near his house and fix the south boundary line where it runs east and west near his house. The court declined to go to the expense of having the roadbed located or of fixing the south boundary line of said road, but after considerable talk in the court about the matter, the court told W. A. Craighead that he could run out the line at his own expense and locate the roadbed, he having proposed to pay half the expense if the court would have it done. There was no vote taken on the matter and no written order made of the court's action in relation to it, but the court while in session verbally told W. A. Craighead that he could locate the roadbed and fix the south boundary line of said road at his own expense. However, the court did not promise to accept the road as fixed by him. I am well acquainted with the lower Breckenridge and Albany road from Breckenridge to the Shackelford County line, and there is no uniformity in width in said road. It is from thirty to one hundred and sixty feet wide, and I believe in some places it is as much as two hundred feet wide, and I don't believe any one knows where the lines of said road are. The land on each side of the road where it runs by W. A. Craighead's house for some distance both east and west belongs to W. A. Craighead. W. A. Craighead is a surveyor and has done some surveying in this county."

The purpose and object sought to be served by the introduction of this testimony are thus stated in the brief for appellant: "Said testimony was material and conducive to the ends of justice. The defendant's object and purpose in proposing to introduce said testimony was, in the first instance, to rebut the charge of willful intent on the part of the defendant, in view of the fact that the defendant had testified that he had heard that his father, W. A. Craighead, had gotten permission from the commissioners court to run the south boundary line of said road; and further, that he was at the time in the employ of his father and assisted him in run-

ning said line. And for the further reason that the alleged obstruction of the road in this case is the same as that alleged against W. A. Craighead in case No. 1070, on the docket of this court, and is the same string of fence built by W. A. Craighead under authority of the commissioners court. And further, this testimony was offered in view of the fact that the defendant testified that he supposed his father knew what he was doing and had a right to erect the string of fence, and that if his father had no right to build the fence and had any intention to violate the law, he had no knowledge of it, and had no other thought than that his father had a right to do what he was doing. Hence, the testimony of the witness Stevenson was very material to the rights of the defendant on the trial of this cause, and the court committed material error which was calculated to and no doubt did injure the rights of the defendant in excluding the same from the jury." We think, in view of the charge of the court that this testimony should have been received.

Among other things, the court instructed the jury, as follows: "You are instructed that all persons are principals who are guilty of acting together in the commission of an offense and should you find from the evidence beyond a reasonable doubt that W. A. Craighead, J. C. McDonald and the defendant did unlawfully and wilfully obstruct a public road, then you are instructed that the fact that the defendant, Edgar Craighead, was an employee of his father at the time he assisted in so obstructing said public road, if he did so, would not be a justification for the defendant." Evidently if the guilt of appellant was in any sense to be made dependent upon the guilt of his father, it would be proper to have received the testimony of Stevenson which strongly raised the issue of lack of wilfulness or criminal intent on the part of Craighead in fencing up this road.

2. In view of the testimony of appellant, we think the special charge No. 4 requested by his counsel should have been given. On the trial the appellant testified as followed: "My name is Edgar Craighead. I am the defendant in this case. I am a resident of Stephens County and have lived here all my life. W. A. Craighead is my father. I live at my father's house located on Sandy Creek, on the lower Breckenridge and Albany road, about six miles west of Breckenridge. At the time I am charged with having obstructed the lower Breckenridge and Albany road, I was in the employ of my father, W. A. Craighead, and on the 9th day of September, 1908, in company with J. C. McDonald was unrolling a spool of wire with which my father was building a string of fence about two hundred yards long, and I was acting under the directions and instructions of my father; I was working for him by the month at $25 per month. I did not wilfully obstruct that or any other road, but was a hired hand

acting under the direction of my father who was paying me to do the work. I supposed my father knew what he was doing and had a right to erect the fence, and if my father had no right to build the fence, and had any criminal intent in building the fence or any intention to violate any law, I had no knowledge of it. I had been informed that my father had gotten permission from the commissioners court to run out the road and I had no other thought than that he had a right to do what he was doing. I am twenty-three years of age, and this is the first time I was ever brought into court. When Mr. Yocum and Mr. Downs met us on the 9th day of September when myself and McDonald were unrolling the spool of wire, I had no conversation with them but only spoke to them. The building of the string of fence was of no concern to me. I had no interest in the fence and but for that I was in the employ of my father, and was acting under his directions, I would not have been there. I have been in the employ of my father, W. A. Craighead, since last May, 1908." On cross-examination he testified as follows: "Yes it is true that I knew that it is a violation of the law to obstruct a public road, and I also knew that the lower Breckenridge and Albany road is a public road, or at least I thought it is. I knew that the commissioners court has been regularly appointing overseers for same and apportioning hands to work the same, and that the said road has been worked as a public road for more than ten years. It is true that my father, W. A. Craighead, McDonald and myself constructed the new three-wire fence, and it is probably true that after the said new fence was constructed that there was less than forty feet left for a public road; I did not measure the distance, and did not take any pains to see how much space was left between the two fences for a public road." The charge No. 4 requested to be given, was as follows: "You are charged that, if you believe from the evidence in this case, that at the time the defendant is charged with having obstructed the road, that he was a hired hand in the employ of his father, W. A. Craighead, and by virtue of said employment assisted the said W. A. Craighead in building the fence, and that he did so under the instruction of his father, W. A. Craighead, and believed that his father had a right to build said fence, and had no knowledge of any criminal intent on the part of his father, if any, to unlawfully and wilfully obstruct the public road by building said fence, you will find the defendant not guilty." The court in a general way had submitted this issue to the jury, but not, we think, as clearly or fully as the facts demanded and as instructed in the above named charge.

For these errors the judgment of conviction is reversed and the cause remanded for another trial.

*Reversed and remanded.*